IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY MOORE, | ) | CASE NO. 3:08 CV 2895 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| TIMOTHY BRUNSMAN, *Warden*, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

**Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

**Facts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
    **A.**    **Underlying facts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
    **B.**    **Indictment, pre-trial motions and trial** . . . . . . . . . . . . . . . . . . . . -5-
    **C.**    **First motion for a new trial** . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
    **D.**    **Direct appeal** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
        *1.*    *The Ohio court of appeals* . . . . . . . . . . . . . . . . . . . . . . . . -7-
        *2.*    *The Supreme Court of Ohio* . . . . . . . . . . . . . . . . . . . . . . . -9-
    **E.**    **Post-conviction proceedings – Rule 26(B) application** . . . . . . . . . . . -11-
    **F.**    **Subsequent proceedings** . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
        *1.*    *Second motion for a new trial* . . . . . . . . . . . . . . . . . . . . . . -18-
        *2.*    *Post-conviction motion for discovery* . . . . . . . . . . . . . . . . . . -19-
        *3.*    *Third motion for a new trial* . . . . . . . . . . . . . . . . . . . . . . . -19-
    **G.**    **Federal habeas petition** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

**Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-
    **A.**    **Standards of review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-
        *1.*    *Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-
        *2.*    *AEDPA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -28-
    **B.**    **Recommended dispositions** . . . . . . . . . . . . . . . . . . . . . . . . . . -29-
        *1.*    *Moore's first ground for relief should be dismissed as procedurally*
            *defaulted*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-
            *a.*    *Appellate Rule 26(B)* . . . . . . . . . . . . . . . . . . . . . . . -29-
            *b.*    *Criminal Rule 33* . . . . . . . . . . . . . . . . . . . . . . . . . -30-

**2.**     ***Moore's second ground for relief – that his statements to police should have been suppressed as violating his Fifth Amendment right because they were made without a prior Miranda warning – should here be denied because the state court that denied this claim did so by reasonably applying clearly established federal law.*** . . . . . . . .  -36-

**3.**     ***Moore's third ground for relief – that he was impermissibly denied the right to confront witnesses against him at trial due to the position of the prosecutor in the courtroom – should be denied because the state court opinion denying this claim did not unreasonably apply clearly established federal law concerning the Confrontation Clause.*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -38-

**4.**     ***Moore's fourth ground for relief – that the state trial court improperly refused to declare a mistrial – should here be denied because the state appeals court reasonably applied the clearly established federal law on declaring a mistrial to the facts of this case.*** . . . . . . . . . . . .  -40-

**Conclusion**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -42-

# Introduction

Before me by referral[1] is the petition of Timothy J. Moore for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Moore is now incarcerated by the State of Ohio in the Lebanon Correctional Institution at Lebanon, Ohio, where he is serving a term of 15 years to life.[3] Moore's sentence was imposed in 2006 by the Allen County Common Pleas Court after a jury found Moore guilty of one count of murder.[4]

---

[1] This matter was referred to me pursuant to Local Rule 72.2 by non-document order dated December 17, 2008.

[2] ECF # 1 (petition).

[3] *Id*. at 2.

[4] *Id*.

Moore, who is here represented by counsel, raises four grounds for relief:

(1)     multiple instances of alleged ineffective assistance of trial counsel;[5]

(2)     the use at trial of statements made by Moore during a purportedly unconstitutional interrogation by police;[6]

(3)     an alleged violation of Moore's rights under the Confrontation Clause during trial;[7] and

(4)     the failure of the trial court to declare a mistrial.[8]

The State, in response, asserts that the ineffective assistance of counsel claim should be dismissed as procedurally defaulted,[9] while the remaining claims, which were denied by the Ohio appeals court on the merits, should here also be denied because the Ohio court's decisions were not unreasonable applications of clearly established federal law.[10]

For the reasons that follow, I will recommend that the State's position be adopted as to all Moore's asserted grounds for relief.  Moreover, because I will specifically recommend that the ineffective assistance of counsel claim be dismissed as procedurally defaulted, I will

---

[5] *Id.* at 6.

[6] *Id.* at 8.

[7] *Id.* at 9.

[8] *Id.* at 11.

[9] ECF # 9 (amended return of the writ) at 14-19.

[10] *Id.* at 19-32.

also recommend that Moore's pending motions to conduct discovery related to that claim[11]

and to seal a document associated with such proposed discovery[12] be denied as moot.

## Facts

### A.    Underlying facts

The facts of the underlying offense were set forth by the state appeals court[13] as

follows:

> In February 2006, Moore lived in a house in Athens County, Ohio with his wife, the victim in this case.  The victim's two younger daughters also lived in the house.  Moore and the victim had marital difficulties, and the victim shared a bedroom with her 12-year-old daughter.  Apparently, the victim planned to leave Moore when her daughters finished the school year.
>
> On the evening of February 27, 2006, the victim and her daughters visited David and Janice Pohlman on the Pohlman's (sic) farm, where the victim boarded horses.  The victim exercised her horses for several hours, and she and her daughters left the farm and arrived home between 9:00 p.m. and 10:00 p.m.  Within an hour, the victim's daughters laid down in their respective bedrooms.
>
> Thereafter, Moore and the victim engaged in an argument that escalated into a physical altercation.  During the fight, the victim was stabbed in her heart with an eight-inch blade.  When the victim's 12-year-old daughter heard the victim scream, she left her bedroom and found the victim lying on the living room floor covered in blood.  Moore called 911.  According to Moore, the victim attacked him with the knife, he defended himself, he struggled with the victim, and the victim accidentally fell on the knife.

---

[11] ECF # 12.

[12] ECF # 23.

[13] Facts found by the state appeals court in its review of the record are presumed correct by the federal habeas court. *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

Marion Township Police Chief Doug Vermillion and four paramedics arrived at the house minutes after Moore called 911.  Moore met everyone outside in front of the garage.  The paramedics entered the house to tend to the victim, and Chief Vermillion spoke with Moore in the driveway and garage area.  Two additional officers arrived later and arrested Moore.  Unfortunately, the victim died at the scene.[14]

## B.  Indictment, pre-trial motions and trial

Shortly thereafter, Moore was indicted on one count of murder.[15]  Moore entered a plea of not guilty.[16]  Moore, represented by attorney William F. Kluge, then filed two pre-trial motions *in limine* seeking to preclude the prosecution from introducing any testimony that Moore was intoxicated[17] or that the victim, Terri Moore, had ever stated that she had been assaulted or threatened by Timothy Moore.[18]

In addition, Moore moved prior to trial to suppress the introduction of his statements made to Chief Vermillion, arguing that they were made without a prior *Miranda* warning.[19]

---

[14] ECF # 9, Attachment (state record) at 220-21 (opinion of the Third District Court of Appeals).

[15] *Id*. at 1.

[16] *Id*. at 219.

[17] *Id*. at 3-8.

[18] *Id*. at 9-13. The record here does not reflect the disposition of these motions.

[19] *Id*. at 14-21.

Following additional briefing on the motion to suppress[20] and a hearing,[21] Moore's motion to suppress was overruled.[22]

The matter then proceeded to a four-day jury trial.[23]  Moore was found guilty on the single count of murdering his wife[24] and was thereupon sentenced to the mandatory term of 15 years to life.[25]

## C.  First motion for a new trial

While Moore was preparing an appeal from his conviction and sentence, he filed a motion in the trial court for a new trial, premised on the failure of the trial court to declare a mistrial after a bomb was discovered at the home of Moore's ex-wife and all the vehicles at the courthouse – including the jurors' cars – were searched.[26]  Specifically, Moore posited the following five reasons for granting the motion for a new trial:

> 1.    As a result of the discovery of a possible explosive device at the Defendant's ex-wife's home and the searching of all the vehicles in the vicinity of the courthouse on September 20, 2006, the court proceedings ended in an unusual fashion.

---

[20] *Id*. at 22-31 (Moore's supplemental brief on motion to suppress); *id.* at 32-35 (prosecution's brief in opposition to motion to suppress).

[21] *See*, *id*. at 36.

[22] *Id*. at 36-41 (judgment entry overruling motion to suppress).

[23] *See*, *id*. at 222.  I note that the State did not file the transcript of the trial with the other elements of the state record.  The absence here of a full transcript will be addressed below as it may relate to the ineffective assistance of trial counsel claim.

[24] *Id*. at 44.

[25] *Id*. at 47.

[26] *Id.* at 48-49.

2.     The Defendant moved for a mistrial on the morning of September 21, 2006, on the grounds that Defendant was prevented from having a fair trial.

3.     Though the court voir dired each juror separately about the preceding day's events, at least one (1) juror was upset by the fact that because she lived in Elida, as the Defendant did, there could be repercussions from her decisions pertaining to the case and she was obviously intimidated albeit she indicated that it was not due to the events of September 20, 2006.

4.     The fact that jurors were escorted to their cars in the evening of September 20, 2006 by armed and uniformed law enforcement personnel, obviously made them feel they were in a threatening situation.

5.     Further, jurors and witnesses for the Defendant were intimidated by the massive police presence and apparent likelihood of possible harm directed at them, seemingly emphasized as all the jurors were escorted to their cars by law enforcement personnel.[27]

After the State had responded in opposition to the motion for a new trial,[28] Moore's motion was denied.[29]

## D.    Direct appeal

### 1.    *The Ohio court of appeals*

Moore, now represented by new counsel but with trial counsel remaining as co-counsel, then timely filed an appeal from his conviction and sentence.[30]  In addition,

_____

[27] *Id.* at 48-49.

[28] *Id.* at 73-76.

[29] *Id*. at 77-78.

[30] *See*, ECF # 9 at 5.  The state record does not contain the actual notice of appeal, but the facts given here are referenced in the State's return of the writ and are not contested.

Moore also appealed from the denial of his motion for a new trial.[31] Those two appeals were then consolidated.[32]

In the consolidated appeal Moore raised the following 10 assignments of error:

1.      The trial court committed an error of law when it overruled Appellant's motion to suppress.

2.      The trial court committed an error of law by denying Appellant due process of law when he was obstructed from viewing certain witnesses' testimony by the Prosecutor's physical barricade.

3.      The trial court committed an error of law by denying Appellant access to the Allen County Children Service Records.

4.      The trial court committed an error of law by failing to find that a mistrial had occurred after the jury pool was exposed to the aftermath of a bomb threat.

5.      The trial court committed an error of law by denying Appellant's Criminal Rule 29 motion for acquittal based upon the State's failure to prove the essential element of purpose.

6.      The trial court committed an error of law when it failed to allow defense counsel the opportunity to put on demonstrative evidence regarding force.

7.      The trial court committed an error of law by not allowing Appellant the right to adduce specific facts of evidence under Ohio Rules of Evidence 404 and 405.

8.      The trial court committed an error of law when it permitted the State to elicit prior consistent statements on rebuttal.

9.      The jury verdict is not supported by sufficient evidence and is against the manifest weight of the evidence.

---

[31] *Id.*

[32] ECF # 9, Attachment at 79-81.

10.    The trial court made an error of law in denying the Criminal Rule 33, Motion for a New Trial.[33]

The State filed a brief in response,[34] to which Moore filed a reply.[35]  The Ohio appeals court thereupon overruled each of Moore's assignments of error, affirming the trial court's decisions in all respects.[36]

## 2.    *The Supreme Court of Ohio*

Moore, now represented by his current attorney, then timely filed an appeal with the Supreme Court of Ohio.[37]  In his jurisdictional memorandum[38] Moore raised 14 propositions of law:

1.    Appellate counsel was ineffective for failing to seek removal of trial counsel from [the] appeal to enable presenting an assignment of error for ineffective assistance of trial counsel.

2.    Trial counsel provided ineffective assistance of counsel.

3.    The trial court erred [by] failing to grant a mistrial after the jury was exposed to a bomb threat violating Moore's right to a fair trial.

4.    The trial court committed an error of law when it overruled Moore's motion to suppress in violation of Moore's 4th Amendment right.

---

[33] *Id*. at 83-84.

[34] *Id*. at 143-80.

[35] *Id*. at 201-18.

[36] *Id*. at 219-49.

[37] *See*, ECF # 9 at 6.  Once again, the actual notice of appeal is not part of the record as filed but the fact that Moore did timely file an appeal through new counsel is not disputed.

[38] ECF # 9, Attachment 1 at 250-66.

5.  The prosecution's purposeful blocking of Defendant's view of witnesses violated the confrontation clause.

6.  The trial court erred when voir diring (sic) the minor child regarding her understanding of truth in violation of Evid. R. 601(A).

7.  The trial court committed an error of law by denying Appellant access to the Allen County Children Service records in violation of Crim. R. 16.

8.  The trial court erred denying Moore's Criminal Rule 29 motion for acquittal as the State failed to prove the essential element of purpose.

9.  The trial court erred excluding demonstrative evidence regarding force in violation of the standard in *Miller v. Bike Athletic Company*, 80 Ohio St. 3d 607 (1997).

10.  The trial court erred excluding specific acts evidence under Ohio Rules of Evidence 404 and 405.

11.  The trial court erred permitting a state witness to vouch for the truthfulness of another witness, violating Moore's right to a fair trial.

12.  The jury verdict is not supported by sufficient evidence and is against the manifest weight of the evidence.

13.  The trial court erred denying the motion for a new trial in violation of factors entitling Moore to a new trial found in Ohio Criminal Rule 33.

14.  The cumulative errors of the trial court deprived Appellant of a fair trial.[39]

The State did not file a responsive brief, but Moore did submit additional authority relative to his second proposition of law – the claim of ineffective assistance of trial counsel.[40]  On December 12, 2007, the Supreme Court of Ohio declined jurisdiction and

---

[39] *Id.* at 251.

[40] *Id*. at 318-26.

dismissed the appeal as not involving any substantial constitutional question.[41]  The record does not show that Moore sought a writ of certiorari from the United States Supreme Court.

### E.  Post-conviction proceedings – Rule 26(B) application[42]

While Moore's direct appeal was pending before the Ohio Supreme Court, Moore, here also acting through his present counsel, filed an application to reopen his appeal under Ohio Appellate Rule 26(B).[43]  In this application, Moore contended first that his trial counsel, William Kluge, was ineffective as co-counsel on the direct appeal because he did not withdraw from that appeal so that remaining counsel could argue Kluge's ineffectiveness at trial.[44]  Further, he argued that both co-counsels on appeal were ineffective for not arguing that the trial court erred by admitting hearsay testimony that Terri Moore, the victim, told others that she feared Moore.[45]

Moreover, in this 26(B) application Moore claimed that Kluge was ineffective as trial counsel for the following reasons:

---

[41] *Id*. at 327.

[42] A Rule 26(B) application to reopen an appeal is part of Ohio's post-conviction review and not part of the direct appeal process. *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005), overruling *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000).  Moore mistakenly cites the overruled case of *Schotten* for the invalid position that Ohio's Rule 26(B) "process is considered part of the direct appeal for purposes of procedural default analysis."  *See*, ECF # 24 at 3.

[43] ECF # 9, Attachment at 328-38.

[44] *Id*. at 330.

[45] *Id*. at 330-31.

1.      Kluge did not disclose a significant hearing impairment that precluded him from hearing substantial parts of the proceedings, thus causing him to miss elements to which he should have objected and to repeatedly ask Moore's 12 year-old daughter, the State's key witness who refuted Moore's claim of self-defense, to repeat damaging testimony that he did not clearly hear the first time it was said.[46]

2.      Kluge did not obtain an analysis of the victim's computers to determine if she previously did or said anything consistent with Moore's assertion that she was intent on harming him.[47]

3.      Kluge failed to adequately prepare Moore's expert witness – a forensic pathologist.  Moore maintained that Kluge met with this witness only on the day of trial and then failed to go over key parts of the evidence.[48]

4.      Kluge failed to object, possibly due to his alleged hearing loss, to damaging argumentative questions posed by the prosecutor.[49]

5.      Kluge failed to object to the trial court's purportedly inadequate voir dire of the 12 year-old witness's understanding of truthfulness and the nature of taking an oath.[50]

6.      Kluge failed to object at trial to the prosecutor standing in such a way as to block Kluge and Moore from viewing a witness.[51]

7.      Kluge assigned the bulk of case preparation to his law clerk, who was not an attorney, including preparation of Moore himself for trial.[52]

---

[46] *Id.* at 331-33.

[47] *Id.* at 333.

[48] *Id.* at 333-35.

[49] *Id.* at 335.

[50] *Id.*

[51] *Id.* at 336.

[52] *Id.*

8.      Kluge failed to follow-up on or ignored potentially exculpatory evidence such as neglecting to investigate the blood spatter at the crime scene, not viewing or photographing defensive wounds on Moore's body and failing to follow-up on reports that the victim was under the care of a psychiatrist and was potentially taking psychotropic medication at the time of her death.[53]

9.      Kluge ignored evidence contradicting the testimony of the Moore's 12 year-old daughter, the State's key witness.[54]

10.     Kluge failed to argue at trial the absence of Moore's fingerprints on the knife that caused the death of Terri Moore, further failed to obtain independent fingerprint analysis as to whose prints, if anyone's, may have been on the knife, and moreover, when questioning the State's trace evidence expert at trial, minimized the relevance of fingerprint evidence in general.[55]

After Moore filed supplemental material in support of his Rule 26(B) application,[56] the State filed a response, arguing first that Moore's application was untimely by one day and that Moore had neither asked for permission to file late nor advanced reasons for his untimeliness.[57]  Substantively, the State argued that attorney Brandie Hawkins, not Kluge, was the counsel of record on appeal and so could have presented any arguments on direct appeal relating to alleged deficiencies of Kluge as trial counsel.[58]  In addition, the State contended that those claims of ineffective assistance of trial counsel not refuted by the trial

---

[53] *Id*. at 336-37.

[54] *Id*. at 337.

[55] *Id*. at 338.

[56] *Id.* at 381-84.

[57] *Id*. at 385-87.

[58] *I*d. at 389.

record itself but relying on information outside of the record may not be considered in a Rule 26(B) proceeding, which is confined to claims that are reflected in and supported by the existing record.[59]

Moore thereupon filed a reply to the State's brief, asserting initially that Moore's incarceration and his need to seek alternative counsel for the Rule 26(B) application provided good cause for the delay of a single day in filing the application[60] and that dismissal on these facts would be contrary to the principle of deciding cases on their merits.[61]  As to the State's substantive contentions, Moore contested only the argument that Kluge was not co-counsel on appeal, asserting that Kluge was paid the entire fee for the appeal and subsequently enlisted Hawkins to assist him.[62]

The Ohio appeals court, in its decision, first agreed with Moore that the single day delay in filing did not warrant dismissal of the application.[63]  However, the court then agreed with the State that "the record indicates that Brandie Hawkins was appellate counsel, not

----

[59] *Id*. at 389-90. The State here noted that where the existing record is insufficient to maintain a claim of ineffective assistance of counsel, "the proper forum for such a claim is a postconviction proceeding, not an appeal."  *Id*. at 389, citing *State v. Cooperrider*, 4 Ohio St. 3d 226, 227, 448 N.E.2d 452, 453 (1983).

[60] *Id*. at 392-93.

[61] *Id*. at 393-94.

[62] *Id*. at 395.

[63] *Id*. at 399-400.

Kluge."[64]  Thus, there was no barrier to Hawkins raising any argument as to Kluge's ineffectiveness on appeal.

Further, the court, relying on an affidavit of Hawkins submitted by Moore, found that there was no evidence that Hawkins was ineffective on appeal for removing claims concerning Kluge at Kluge's direction.  Specifically, the court concluded that there was no "basis in fact" for finding that Hawkins removed any claims from the appeal, and even if, *arguendo*, some claims were removed, that any removed claims involved allegations against Kluge.[65]

Next, in considering the allegations that Kluge was ineffective as trial counsel, the appeals court found that these claims "lack legal merit."[66]  Specifically, the Ohio appellate court decided the individual claims of ineffective assistance of trial counsel as follows:

1.  Kluge was not ineffective for having a hearing impairment.  "[A]n ineffective assistance of counsel claim based on a hearing impairment alone is insufficient."[67]

2.  Kluge was not ineffective for failing to examine the personal computers of the victim for potentially exculpatory evidence.  "Moore's claim that the [victim's] personal computers might have contained exculpatory evidence is mere speculation."[68]  Moreover, "counsel's investigation in

---

[64] *Id.* at 400.

[65] *Id*. at 400-401.

[66] *Id*. at 401.

[67] *Id*. (citations omitted).

[68] *Id.*

preparation for trial is strategy ...," and "we will not find ineffective assistance of counsel based on trial strategy."[69]

3.    Kluge was not ineffective for failing to prepare an expert witness.  The choice of questions to "ask[] (or not ask[]) of an expert witness at trial is also trial strategy," and so not a basis for finding ineffective assistance.[70]

4.    Kluge was not ineffective for failing to object to argumentative questions.  Again, the court concluded that the decision to object or not at trial to even an improper question is trial strategy and so not a basis for finding ineffective assistance.[71]

5.    Kluge was not ineffective for failing to object to the trial court's voir dire of an underage witness to determine competency.  Competency determinations by the district court are reviewable only for abuse of discretion, and "[t]here is nothing in this record to indicate that the trial judge abused his discretion."[72]

6.    Kluge was not ineffective for failing to object to the prosecutor blocking his view of the witness on certain occasions.  "We have found no case law to support Moore's allegation" in this regard.[73]

7.    Kluge was not ineffective for having the assistance of a law clerk when preparing for trial.  "Other courts have considered similar claims and rejected them."[74]

---

[69] *Id.* at 40-412.

[70] *Id.* at 402 (citation omitted).

[71] *Id.* (citation omitted).

[72] *Id.*

[73] *Id.*

[74] *Id.* at 403 (citations omitted).

8. All remaining claims that Kluge was ineffective "likewise, allege items that are best described as trial strategy. Accordingly, these claims also do not meet the standard for ineffective assistance of counsel ...."[75]

Finally, as to the last assertion that appellate counsel Hawkins was ineffective because she did not raise an issue on appeal as to the admission at trial of hearsay from the decedent that she was fearful of Moore, the Ohio appeals court found that the evidence at issue was properly admitted because it "rebutted Moore's allegation that he never intended to harm his wife."[76]

In sum, the appellate court found that "appellate counsel capably challenged the State's case," and "no error prejudicial to Moore" was found in the record.[77] Accordingly, Moore's Rule 26(B) application to reopen the appeal was denied.[78]

Although Moore subsequently moved for reconsideration of this order denying his 26(B) application,[79] which motion was denied,[80] the parties here agree that he never appealed this denial to the Supreme Court of Ohio.[81]

---

[75] *Id*.

[76] *Id.*

[77] *Id*. at 404.

[78] *Id*.

[79] *Id*. at 405-414.

[80] *Id.* at 417-418.

[81] *See*, ECF # 9 (return of writ) at 9; ECF # 24 (Moore's supplemental brief) at 3.

**F.**   **Subsequent proceedings**

*1.*   ***Second motion for a new trial***

While Moore's Rule 26(B) application was pending at the Ohio appellate court, he filed a second motion for a new trial with the trial court, apparently raising in this forum the same issues of attorney Kluge's ineffectiveness as trial counsel that were asserted in the Rule 26(B) application.[82]  At the same time, Moore also moved the trial court to recuse itself from this case and for a change of venue.[83]

In a single order addressing all three motions, the Ohio trial court overruled the motions for recusal and for a change of venue, and further denied the motion for a new trial as untimely, ruling that Moore had not sought prior permission to file a delayed motion nor demonstrated any cause for his late filing.[84]  Again, as with the denial of his Rule 26(B) application, Moore did not appeal from the decision of the trial court to deny his second motion for a new trial[85] but would later include the denial of his motions to recuse and for a change of venue in a subsequent appeal.[86]

---

[82] *See*, *id.* at 419-20; *see also*, ECF # 9 at 9.  The state record does not include this motion but the motion and its grounds are referenced in the order denying the motion as well as in the State's return of the writ.

[83] *Id.*

[84] *Id.* at 419-23.

[85] *See*, ECF # 9 (return of writ) at 9.

[86] *Id.* at 432.

### 2. *Post-conviction motion for discovery*

Several months after the trial court had denied Moore's motions to recuse, for a change of venue and for a new trial, Moore filed a new motion in that forum seeking an order to have computer forensic analysis performed on all the seized computers in the State's possession.[87]  After the State filed a response,[88] the Ohio trial court denied Moore's motion, noting that the motion appeared to be a discovery motion filed when no postconviction matter was then pending and that Ohio law has no provision for permitting discovery in such circumstances.[89]  Moore included an assignment of error arising from the denial of this motion in his appeal from a later decision.[90]

### 3. *Third motion for a new trial*

Approximately one month after the motion seeking computer analysis was denied, Moore filed a third motion for a new trial in the Allen County Court of Common Pleas, here presenting the motion as one "for leave to file a motion for a new trial."[91]  In this motion,

---

[87] *See*, *id*. at 10; *see also*, ECF # 9, Attachment (state court record) at 424-25.  Once again, the record here does not contain the actual motion, but it is referred to in the order denying it.

[88] *Id.*  Similarly, the response is not in the record but is referred to in the court's order.

[89] ECF # 9, Attachment at 424.

[90] *Id*. at 432.

[91] *See*, *id*. at 426; *see also*, ECF # 9 at 10.  Once more, the state record does not contain the actual motion but it is referred to in the order denying it which is part of the record.

Moore again claimed "a denial of a fair trial because of trial counsel's ineffectiveness"[92] but here argued that the present motion was based on "'newly discovered evidence from a variety of sources.'"[93]  The State filed a brief in opposition,[94] and the court denied the motion.  The court concluded first that Moore had not shown that he was prevented from discovering the new evidence within the statutory time limits for filing a motion for new trial[95] and further found that, even considering the new evidence, there was nothing to show that "but for the alleged unprofessional errors of counsel, a reasonable probability existed that the result of the trial would have been different."[96]

Moore filed a timely appeal from this decision in which he presented assignments of error related to the denial of this third motion for a new trial/motion for leave to file, as well to the denial of prior motions.  Specifically, Moore raised the following four assignments of error:

1.    The trial court erred denying Moore's motion for leave to file a motion for a new trial.

2.    The trial court erred denying Moore's motion for an order to examine the seized computers and media in this matter.

3.    The trial court erred in declining to recuse itself prior to ruling on the motion for a new trial.

---

[92] *Id*. at 426.

[93] *Id*. at 428 (court order denying motion, quoting from motion).

[94] *See*, *id.* at 426 (court order denying motion referencing State filing).

[95] *Id*. at 430.

[96] *Id*. at 429.

4.      The trial court erred in declining to grant Moore's motion for a change
of venue.[97]

The State responded in opposition,[98] and the Ohio appeals court thereupon overruled

all assignments of error and affirmed the decisions of the trial court.[99]

In regards to the specific assignment of error related to the denial of leave to file an

untimely motion for a new trial, the appeals court noted that each of the allegations of

ineffective assistance forming the basis for the underlying motion for a new trial was known

to Moore well before he filed his third motion for a new trial, thus refuting any claim that he

was unavoidably prevented from knowing these grounds prior to filing this third motion.[100]

Moreover, the court determined that to the degree the "new evidence" behind the third

motion was the basis for the similar claims of ineffective assistance of counsel in the denied

second motion for a new trial, the argument was *res judicata*.[101]

Moore timely appealed this decision to the Supreme Court of Ohio.  In his

jurisdictional memorandum, Moore raised the following three propositions of law:

1.      The trial court abused its discretion denying leave for Moore to file a
motion for a new trial.

_____

[97] *Id*. at 433.

[98] *Id*. at 458-77.

[99] *Id*. at 478-92.

[100] *Id*. at 487-88.

[101] *Id*. at 488.

2.      A trial court abuses its discretion when it denies a citizens (sic) post-conviction request to examine computer evidence at the citizen's cost.

3.      A trial court abuses its discretion refusing to recuse itself from ruling on a motion for a new trial when it has been informed of the possibility that the judge would be a witness at the motion for a new trial.[102]

Apparently, the State did not file a response to Moore's jurisdictional memorandum. The Supreme Court of Ohio denied leave to appeal, dismissing the appeal as not involving any substantial constitutional question.[103]

## G.      Federal habeas petition

On December 10, 2008, Moore, through counsel, timely[104] filed a petition for habeas relief containing four grounds for relief:

1.      Ineffective assistance of counsel.

Supporting facts: The appeal was handled by two attorneys. One of these attorneys was not involved in the trial; the other, William F. Kluge, was the sole trial counsel. Appellate co-counsel was ineffective for failing to assign as error the ineffective assistance of Kluge as appellate co-counsel, who was trial counsel. Trial counsel was ineffective as he was severely hearing impaired throughout the trial, yet failed to make the client aware of this fact. Trial counsel also failed to prepare the defense's only expert witness resulting in that expert misstating key evidence that favored the defendant as if it favored the state, counsel and the expert denigrated evidence supporting the

---

[102] *Id.* at 494.

[103] ECF # 22.  The Supreme Court of Ohio's action on this appeal was taken after the State filed the record in this case and was later added in a separate filing.

[104] I note that the present petition was filed on December 10, 2008, and the Supreme Court of Ohio decided Moore's direct appeal on December 12, 2007. Thus, regardless of the status of any subsequent proceedings or appeals, the present habeas petition is timely filed as being within one year of the date Moore's conviction became final.  28 U.S.C. § 2244(d)(1)(A).

-22-

defense, failed to have an expert analyze computers used by the decedent for exculpatory evidence, failed to have a blood spatter analysis at the crime scene analyzed, failed to locate, speak with and use adult witnesses whose testimony contradicts the key state witness, a 12-year-old, on alleged comments made by the defendant following the accidental death of his wife, solicited a repetition of the most damning testimony by the state's only witness with inculpatory evidence as a result of his severe hearing impairment. Generally, conducted himself in a manner far worse than a previous murder case in which he was found ineffective in the 6th Circuit Court of Appeals within the past two years.[105]

2.  Violation of 5th Amendment right.

Supporting facts:  Motion to suppress was filed regarding statements extracted from Defendant while in custody in his garage. The statements were used against him at trial, over objection and after a motion to suppress was denied pre-trial. Defendant was found in his garage when police arrived and an officer stood in the entrance of the garage, told the defendant not to leave and that he could not re-enter his home. The officer then proceeded to question him about the incident that occurred at the home that evening resulting in the accidental death of his wife.[106]

3.  Violation of Defendant's Confrontation Clause Right.

Supporting facts:  During trial, the testimony of the State's key witness, a 12-year-old, the prosecutor purposefully stood between the Defendant and his counsel and the witness. This shielding was objected to on numerous occasions without the conduct abating. The prosecutor effectively disabled the Defendant from confronting the State's key witness by shielding that witness from view throughout her entire direct examination.[107]

4.  Right to a Fair Trial and Due Process

Supporting Facts:  During the trial, with the jury empaneled, a pipe bomb was found under the Defendant's car which was parked at his former wife's residence. Mrs. Moore and the Defendant's 3 children and grandchild

---

[105] ECF # 1 at 6.

[106] *Id*. at 8.

[107] *Id*. at 9.

were at home at the time.  The Allen County Sheriff's Office made the connection between the bomb at 5825 Poling Rd. and the Moore trial.  They decided to search the courthouse and the surrounding streets – including the cars of the jurors, judges and lawyers.  Court was recessed while this was going on enabling the jurors to observe their cars and surrounding area being searched for explosives.  One of the jurors did get off the jury saying that she was concerned for her safety.  The threat against the Moore family was considered real – police continued to patrol the Poling Rd. residence for the duration of the trial.  Mrs. Moore and 2 of the children in the house testified on the Defendant's behalf the next day.[108]

The State filed a return of writ arguing:

1.    Ground one alleging ineffective assistance of both trial and appellate counsel is procedurally defaulted since (a) Moore did not appeal from the denial of his Rule 26(B) application (properly containing only the claims against appellate counsel) and (b) had his second motion for a new trial judged untimely, which motion sought to present grounds for ineffectiveness concerning trial counsel.[109]

2.    Grounds two, three and four are without merit because the Ohio appeals court decision denying these claims was not an unreasonable application of clearly established federal law.[110]

Moore filed a traverse[111] arguing that his second motion for a new trial, wherein he raised the ineffectiveness claims against trial counsel, should not be considered procedurally defaulted because it was never heard on the merits[112] but was rejected "on procedural

---

[108] *Id*. at 11.

[109] ECF # 9 at 15-18.

[110] *Id*. at 22-32.

[111] ECF # 11.  Moore denominated the traverse as a reply.

[112] *Id*. at 3.

grounds"[113] for lack of a prior motion for leave to file, which motion for leave to file was, in turn, subsequently unreasonably denied when later sought.[114]   The traverse, which extensively re-argues the ineffective assistance of trial counsel claim,[115] does not address the State's argument concerning the remaining three claims.

As noted previously, the parties participated in an oral argument on the procedural default issue arising out of ground one[116] and then submitted supplemental briefs after the oral argument.[117]   As also noted previously, Moore has also filed a motion to conduct discovery related to his claim of ineffective assistance by trial counsel,[118] which motion has been opposed by the State.[119]   Moore has also moved to seal[120] a document[121] related to his request for discovery.

The above matters are now ready for a recommendation as to their disposition.

---

[113] *Id.* at 12.

[114] *Id.*

[115] *Id.* at 3-11.

[116] ECF # 21.

[117] ECF # 24 (Moore); ECF # 25 (the State).

[118] ECF # 12.

[119] ECF # 14.

[120] ECF # 23.

[121] ECF # 19.

# Analysis

## A.    Standards of review

### 1.    *Procedural default*

Under the doctrine of procedural default, the federal habeas court is precluded from reviewing a claim for relief if the petitioner failed to obtain consideration of that claim on its merits in state court, either because the petitioner failed to raise it when state remedies were still available or due to some other violation of a state procedural rule.[122]

When a violation of a state procedural rule is alleged as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

(1)    Does a state procedural rule exist that applies to the petitioner's claim?

(2)    Did the petitioner fail to comply with that rule?

(3)    Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?

(4)    Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?[123]

---

[122] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

[123] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

In addition to establishing these elements, the state procedural rule must be shown to be (a) firmly established and (b) regularly followed before the federal habeas court will decline to review an allegedly procedurally defaulted claim.[124]

If a procedural default is established, the default may be overcome if the petitioner can show cause for the default and actual prejudice from the court's failure to address the alleged constitutional violation.[125]  In addition, procedural default may also be excused by a showing of actual innocence.[126]

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule.[127] Demonstrating "prejudice" requires the petitioner to show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension.[128]  There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial.[129]

Notwithstanding these elements, the Supreme Court has held that federal habeas courts are not required to consider an assertion of procedural default before deciding a claim

---

[124] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

[125] *Deitz v.Money*, 391 F.3d 804, 808 (6th Cir. 2004).

[126] *Id.*

[127] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

[128] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[129] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

against the petitioner on the merits.[130]  In that regard, the Sixth Circuit has stated that a federal habeas court may bypass an issue of procedural default when that issue presents complicated questions of state law and addressing it is unnecessary to resolving the claim against the petitioner on the merits.[131]

## 2.    *AEDPA*

Under the standard of review prescribed by the Antiterrorism and Effective Death Penalty Act (AEDPA), the relevant portion of which is codified in amended 28 U.S.C. § 2254(d)(1), a federal habeas court shall not grant the writ to a person in custody pursuant to a judgment of a state court unless the state court's adjudication of the petitioner's claim resulted in a decision that was (1) contrary to, or (2) involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

As is now well-established, under the "contrary to" clause, a federal court may grant habeas relief  if the state court arrives at a decision opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts.[132]  The term "contrary to" should be understood to mean "diametrically different, opposite in character or nature, or mutually opposed."[133]

---

[130] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[131] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

[132] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

[133] *Id.* at 405.

Under the "unreasonable application" clause, the federal habeas court may grant relief if the state court identifies the correct governing legal principle from the decisions of the Supreme Court but unreasonably applies that principle to the facts of the petitioner's case.[134] The proper inquiry for an "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect.[135]

## B.    Recommended dispositions

### 1.    *Moore's first ground for relief should be dismissed as procedurally defaulted*.

Before addressing the substance of the procedural default issue here, some preliminary observations must be made to clarify the issue before the Court.  Specifically, although I will, as noted above, ultimately recommend that Moore's first ground for relief be dismissed as procedurally defaulted, it must be observed that various elements of this claim were originally presented in, or attempted to be presented in, two distinct state court circumstances – (1) as part of the Rule 26(B) application to re-open the appeal, and (2) as the foundation for the motion for a new trial made to the state trial court.

### a.    *Appellate Rule 26(B)*

I observe, as noted briefly above, that there is no question that Moore, in his Rule 26(B) application, raised ineffective assistance arguments concerning Kluge similar to those

---

[134] *Id.* at 407-08.

[135] *Id.* at 409-11.

raised here, and did not appeal from the denial of that motion.  As such, he procedurally defaulted any element on this claim founded in the Rule 26(B) application.[136]

The court of appeals expressly determined that Moore's appellate counsel was not ineffective for failing to assert specific assignments of ineffective assistance of trial counsel because those assignments had no merit on the record.[137]  To avoid procedural default, Moore needed to appeal this merits decision to the Supreme Court.[138]

b.    *Criminal Rule 33*

Instead of appealing from the adverse decision of the court of appeals on the Appellate Rule 26(B) motion, Moore elected to pursue his ineffective assistance of trial counsel claims by a motion for new trial under Criminal Rule 33.

Although this motion for new trial overlaps the Rule 26(B) motion to the extent that Moore makes similar ineffective assistance of trial counsel arguments in each, Moore posits that the motion differs because additional evidence of Kluge's shortcomings exists *de hors* the record.  Ineffective assistance of trial counsel can only be raised on direct appeal based

---

[136] Moore himself admits he failed to appeal the denial of his Rule 26(B) application to the Ohio Supreme Court but mistakenly claims that this is irrelevant because his habeas claim should be seen as arising from the motion for a new trial, not the Rule 26(B) application.

[137] ECF # 9, Attachment at 400-04.

[138] *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

on evidence in the trial record.[139]  Otherwise, the defendant must challenge ineffective assistance of trial counsel by post-conviction remedies.[140]

I will assume arguendo that the distinction that Moore seeks to make between arguments assertable on direct appeal and those cognizable only in post-conviction proceedings has some validity.  Nevertheless, as discussed below, it is not necessary to determine with particularity which arguments fit into each category.  Any ineffective assistance of trial counsel arguments properly raised only in post-conviction proceedings have been procedurally defaulted.

In addition, I also note that there is no argument here by the State that Moore procedurally defaulted by raising his claim of ineffective assistance of trial counsel arising under facts outside the record in a Rule 33 motion for a new trial, rather than in a post-conviction petition under § 2953.21.  As the State clearly stated in its brief after oral argument in this matter, there is "no authority for the proposition that such a claim must be raised in a post-conviction petition [under § 2953.21]"[141]  Thus, as the State observes, even though Moore was guided by the Ohio court of appeals to the "traditional form" of a post-conviction petition, "he was free to go his own way" and file a motion for a new trial under Ohio Criminal Rule 33.[142]

---

[139] *State v. Hartman*, 93 Ohio St. 3d 274, 299, 754 N.E.2d 1150, 1177 (2001).

[140] *State v. Fryer*, 90 Ohio App. 3d 37, 48, 627 N.E.2d 1065, 1072 (1993).

[141] ECF # 25 at 1.

[142] *Id.* at 1-2.

Accordingly, the remaining procedural default issue arising as to ground one of the present habeas petition is whether, having elected to raise the claim of trial attorney Kluge's ineffectiveness by way of a motion for a new trial, Moore procedurally defaulted that claim when the motion was denied as untimely.

In considering the issue as framed above,  Moore argues that no procedural default occurred because, although his second motion for a new trial was denied for the procedural reason of failure to file a predicate motion for leave to file, his subsequent or third motion for a new trial "was denied on the merits by the trial court" and that denial "was appealed all the way to the Ohio Supreme Court."[143]  In such a case, he maintains, no procedural default would exist because the state court was not barred from reaching the merits of the claim by any failure of the petitioner to observe a state procedural rule applicable to him.

In fact, the so-called third motion for a new trial was denied, as the state appeals court observed, for two reasons:  the first reason being that "it was untimely," with  Moore failing to demonstrate by clear and convincing evidence why he was unavoidably prevented from filing a timely motion, but also because the trial court found that evidence submitted with the motion did not demonstrate that any claimed ineffective assistance prejudiced Moore at trial.[144]  The state court's decision, therefore, rests on both a procedural ground (the motion was untimely) and a substantive ground (there was no evidence that any deficient conduct by the trial attorney was prejudicial).  Accordingly, such a decision with dual bases must be

---

[143] ECF # 24 at 2.

[144] ECF # 9, Attachment at 483 (appeals court decision).

analyzed to determine if it can serve as the ground for procedural default in a federal habeas action.

In cases where the last state court to consider the petitioner's claim denies it both on a state procedural ground and on the merits of the federal law claim, the well-established rule is that a procedural default may be deemed to exist since the state court has provided an adequate and independent state law ground – here, untimeliness – for denying the petitioner's claim that precludes federal habeas review.[145]

Thus, the remaining issue, arising from *Maupin*, for the federal habeas court to consider before finding that a procedural default exists is whether the adequate and independent state time bar of Ohio Criminal Rule 33 is "firmly established and regularly followed" so as to preclude federal habeas review.

As to the issue of whether Ohio's timeliness requirement in Rule 33 motions for a new trial is "firmly established and regularly followed," I note first that I have not discovered any federal habeas cases specifically addressing this issue. Unlike the situation arising under dismissals for untimeliness in Ohio Appellate Rule 26(B) applications where a substantial body of case law on whether the time bar there has been enforced or ignored by Ohio

---

[145] *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989). A federal habeas court is barred from reaching the merits of a federal claim in a case where the state court considered both procedural and substantive aspects of the claim "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for its decision. In this way a state court may reach a federal question without sacrificing its interests in finality, federalism and comity."

courts,[146] the same timeliness issue under Rule 33 motions appears not to have been as extensively considered.

However, two recent federal habeas decisions are instructive. In *Matthews v. Ishee*,[147] the Sixth Circuit recently assumed without deciding that an untimely-filed motion under Ohio Rule 33 would constitute a procedural default unless the petitioner could show cause for the untimeliness and prejudice from failure to reach the constitutional claim.[148] Similarly, in *Gross v. Jackson*,[149] a decision from the Southern District of Ohio, the federal habeas court concluded that an untimely filing of a Rule 33 motion for a new trial without evidence that the untimeliness was due to an unavoidable failure to discover the factual basis for the motion within the time allowed could constitute a procedural default, although the state court in that case did not rule on the untimely motion for a new trial, and so the state never formally asserted procedural default to the federal court.[150]

Accordingly, on the present record and in light of the cited federal case authority, I recommend finding that the timeliness requirement of Rule 33 is a firmly established Ohio

---

[146] *See*, *Franklin v. Anderson*, 434 F.3d 412, 420-21 (6th Cir. 2006) (collecting cases).

[147] *Matthews v. Ishee*, 486 F.3d 883 (6th Cir. 2007).

[148] *Id.* at 890-91.

[149] *Gross v. Jackson*, No. 2:06-cv-00072, 2008 WL 2001754 (S.D. Ohio May 6, 2008).

[150] *Id.* at **22, 26. The federal habeas court stated that it would "not address" the petitioner's claim, which was contained in a Rule 33 motion, because the motion was filed late and there was no evidence of record that the petitioner could provide "clear, convincing proof" that he was unavoidably prevented from discovering the basis for the motion within the allowed time period.

procedural rule capable of providing the basis for a finding of procedural default in a federal habeas matter. Therefore, I further recommend finding that Moore's first claim for relief be found to be procedurally defaulted because the last decision denying that claim by an Ohio court rested on the adequate and independent state law ground of untimeliness which is firmly established and regularly followed in Ohio.

Should this recommended disposition not be adopted as to this claim, I note that the absence of the state trial transcript from this record precludes me from formulating an alternative recommendation as to whether Moore's claim should be denied on the merits. In particular, the absence of the transcript precludes me from closely analyzing either prong of the *Strickland*[151] test for ineffective assistance of counsel.

In particular, I observe that, while individual alleged instances of ineffective assistance were put forth at numerous times and in multiple places by Moore, there is no basis by which those events can be understood in the context of the entire trial. The lack of a transcript also precludes a thorough analysis under the second, or prejudice, prong of *Strickland* in that I cannot precisely determine what evidence – beyond that of the testimony of the victim's daughter and Moore's own admission to the police chief on the night the victim died – exists on the record such that any damage purportedly inflicted by ineffective assistance of trial counsel would be overcome by evidence of Moore's guilt.

Thus, while my recommendation here, as noted, is to dismiss Moore's first claim for relief as procedurally defaulted, my further recommendation if this conclusion is not adopted

---

[151] *Strickland v. Washington*, 466 U.S. 668 (1984).

is for the State to supply the entire trial transcript and for the parties to brief the *Strickland* prejudice prong in light of that submission prior to reaching the question of allowing or disallowing additional discovery on ineffectiveness.

2. ***Moore's second ground for relief – that his statements to police should have been suppressed as violating his Fifth Amendment right because they were made without a prior Miranda[152] warning – should here be denied because the state court that denied this claim did so by reasonably applying clearly established federal law.***

In his second ground for relief, Moore argues that statements he made to police who responded to the 911 call on the night the victim died should have been suppressed at trial because he was not given a *Miranda* warning prior to making the statements.[153]

The state appeals court here found initially that only in cases of a "custodial" interrogation are police required to administer a *Miranda* warning to a suspect before questioning,[154] and then found that, because Moore was not in custody at the time he answered questions from the police chief in the driveway/garage area of Moore's home, no *Miranda* warning was necessary.[155]  Specifically, the Ohio court found that this was a non-custodial interrogation not triggering a *Miranda* warning on the basis of the following facts:

---

[152] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[153] ECF # 1 at 8.

[154] ECF # 9, Attachment at 223.

[155] *Id.* at 225.

Moore did not attempt to leave [the scene of the questioning]; Chief Vermillion did not tell Moore he could not leave; Chief Vermillion kept Moore out of the house and away from paramedics tending to the victim; Chief Vermillion did not keep Moore in the garage; and Chief Vermillion did not place Moore under formal arrest and/or handcuff him.[156]

The State argues here that the Ohio appeals court correctly identified the rule that Miranda warnings are only required for custodial interrogations and then reasonably found from the facts that Moore was not in custody when he was questioned by police the night the victim died.[157]  Moore in his traverse[158] does not address the State's argument on this ground for relief.

I note first that the Ohio court was correct in noting that the obligation to provide a *Miranda* warning prior to questioning only arises as a matter of clearly established federal law when the questioning is done in a custodial setting, where the party being questioned has been deprived of his liberty in some meaningful way.[159]  The test is whether a reasonable person in the defendant's position would have felt free to leave,[160] and not on any subjective view of either the defendant or the interrogating officer.[161]

------

[156] *Id.*

[157] ECF # 9 at 24-25.

[158] ECF # 11.

[159] *Cobb v. Perini*, 832 F.2d 342, 346 (6th Cir. 1987) (quoting *Miranda*, 384 U.S. at 477).

[160] *United States v. Salvo*, 133 F.3d 943, 948-49 (6th Cir. 1998).

[161] *Mason*, 320 F.3d at 631.

Based on the foundational facts as found by the Ohio appeals court, which are presumed correct here[162] and not disputed by Moore, Moore was never formally placed in custody, nor was he ever deprived of his liberty in any significant way, prior to the police chief asking him "six to eight questions" such as "whether the victim had any medical allergies, whether anyone else resided in the house and whether any other victims existed."[163] Seen, then, in light of the clearly established federal law that no requirement for a *Miranda* warning is triggered in such circumstances, the fact that Moore was asked a few questions by the police chief in a non-custodial setting did not create the need for a prior *Miranda* warning to have been issued prior to those questions being asked and so does not create a federal Constitutional violation in admitting the answers to those questions at trial.

Therefore, I recommend denying Moore's second ground for relief.

**3.** *Moore's third ground for relief – that he was impermissibly denied the right to confront witnesses against him at trial due to the position of the prosecutor in the courtroom – should be denied because the state court opinion denying this claim did not unreasonably apply clearly established federal law concerning the Confrontation Clause.*

In this claim, Moore maintains that the prosecutor positioned himself in the courtroom as a physical barrier between Moore and the victim's 12-year old daughter during the daughter's trial testimony, thereby preventing Moore and his counsel from viewing the witness and so depriving Moore of his Sixth Amendment right to confront the witnesses

---

[162] To be clear, the state court's factual findings are entitled to the presumption of correctness, but the ultimate mixed fact and law finding that no custodial interrogation took place is not. *See*, *Salvo*, 133 F.3d at 948.

[163] ECF # 9 at 224.

against him.[164]  The State contends that the Ohio appeals court correctly found that any obstacle to Moore viewing the witness was temporary and transient – as the result of the prosecutor taking various positions in the courtroom during trial – and was immediately corrected by the trial judge when Moore objected.[165]  The State further maintains that, on the above facts, the appeals court did not unreasonably apply the Supreme Court's holding in *Coy v. Iowa*[166] by concluding that the prosecutor's occasional presence between Moore and the witness – which was promptly remedied each time it was objected to – was not comparable to the large screen that was installed in the courtroom as fixed physical barricade between two sexual assault victims and a defendant in *Coy*.[167]

Once again, I note initially that Moore has not addressed the State's argument here in his traverse.[168]  I note further that the state appeals court has reasonably applied the holding of *Coy* in the context of this case.  While accepting, as does the Supreme Court in *Coy*, that Confrontation Clause of the Sixth Amendment in its "irreducible literal meaning" involves the right of a defendant to a face-to face meeting with his accuser before the trier of fact,[169] the appeals court here did not find that the "*de minimus* and occasional interference

---

[164] ECF # 1 at 9-10.

[165] ECF # 9 at 25-28.

[166] *Coy v. Iowa*, 487 U.S.1012 (1988).

[167] ECF # 9 at 28.

[168] *See*, ECF # 11.  The traverse here entirely concerns the alleged procedural default of the ineffective assistance of trial counsel claim.

[169] *Coy*, 487 U.S. at 1016.

[by the prosecutor] with Moore's ability to see the witness"[170] was comparable to the fixed, immovable barrier found to offend the Confrontation Clause in *Coy*.

Because the state court correctly identified the controlling principle from Supreme Court holdings that the Confrontation Clause does involve a face-to-face meeting with one's accuser in court, but then reasonably applied that principle to the facts of this case where the interference with that right to confrontation was "*de minimus* and occasional," I recommend denying Moore's third ground for relief.

**4.**     ***Moore's fourth ground for relief – that the state trial court improperly refused to declare a mistrial – should here be denied because the state appeals court reasonably applied the clearly established federal law on declaring a mistrial to the facts of this case.***

Moore's final ground for habeas relief is that the trial court denied him a fair trial and due process when it refused to grant a mistrial after a bomb was discovered planted under Moore's car during trial.[171] The State argues that the appeals court reasonably applied clearly established federal law that requires a mistrial be declared only in cases of manifest necessity and concluded that the circumstances of this case did not present a circumstance of manifest necessity mandating the declaration of a mistrial.[172]

I again observe preliminarily that Moore does not raise any counter-argument in his traverse to the State's position on this ground for relief.[173] I note next that the State correctly

---

[170] ECF # 9 at 28.

[171] ECF # 1 at 11.

[172] ECF # 9 at 28-32.

[173] *See*, ECF # 11.

-40-

observes that the Ohio court of appeals properly found the controlling federal principle of law to be that a mistrial must be declared only when the ends of justice so require and a fair trial is no longer possible.[174]  That principle of "manifest necessity" has been understood by the Supreme Court in *Sommerville*, the case relied on by the state court here, to mean that a justification for a mistrial exists where the trier of fact could not reach an impartial verdict or if a verdict of conviction would have to be reversed on appeal because of an obvious procedural error at trial.[175]

Here, the only suggestion of any obvious procedural error mandating reversal on appeal is the admission of the testimony of Moore to the police chief, already considered here with the recommended finding that the motion to suppress was properly denied.  Thus, the remaining basis for a finding of manifest necessity is that the jury could not have reached an impartial verdict because of the bomb threat.  In that instance, the state appeals court found from its review of the trial record that because all 12 jurors told the trial judge when they were individually voir dired that they were following the court's instruction to avoid all news reports of the trial and that no events outside the courtroom would either impact their ability to render a fair verdict or change their willingness to serve, "[n]othing in the record

---

[174] ECF # 9 at 32, citing ECF # 9, Attachment at 246 (citing *State v. Franklin*, 62 Ohio St. 3d 118, 127, 580 N.E.2d 1, 9 (1991) (citing *Illinois v. Sommerville*, 410 U.S. 458, 462-63 (1973).

[175] *Sommerville*, 410 U.S. at 464.

establishes that the bomb threat prejudiced Moore in any way" by preventing the jury from reaching a verdict because of the threat.[176]

As noted, Moore has here directed this Court to no evidence that would lead to a contrary conclusion. As such, the identification by the state court of the clearly established federal law applicable to mistrials, and the finding that there was no evidence of record to support granting a mistrial on the basis that the jury could not reach an impartial verdict – indeed, the existence of direct evidence that the jury affirmatively believed its abilities in this area were unimpeded – all support the recommendation that this ground for relief be denied.

## Conclusion

For the foregoing reasons, I recommend that the petition of Timothy Moore for a writ of habeas corpus be dismissed in part and denied in part as is more fully set forth above.


Dated:   December 23, 2009                    s/ William H. Baughman, Jr.
                                              United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[177]

---

[176] ECF # 9 at 29.

[177] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).